**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GROUPON, INC., | |
| Plaintiff, | Civil Action No. 1:16-cv-5064 |
| v. | **JURY TRIAL DEMANDED** |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Groupon, Inc. ("Groupon"), through its undersigned counsel, alleges as follows against Defendant International Business Machines Corporation ("IBM"):

### INTRODUCTION

1. IBM, a relic of once-great 20th Century technology firms, has now resorted to usurping the intellectual property of companies born this millennium. The convergence of connected mobile devices, social networks and location based services (dubbed "SoLoMo") is a defining feature of commerce in today's economy. *See* Matt Murphy & Mary Meeker, *Top Mobile Internet Trends*, Kleiner Perkins Caufield & Byers (Feb. 10, 2011), http://www.firsteditiondesign.com/kpcbtop10mobiletrends021011finalpdf-110210002130-phpap p02.pdf.d. As a leading operator of online local commerce marketplaces, Groupon pioneered these Social-Local-Mobile services and holds valuable patent rights protecting its technology. Indeed, the "combined opportunities of mobile platforms like iOS, social networks like Facebook and local commerce" were "embodied by the rapid growth of Groupon." *See* Seth Fiegerman, *Why 'SoLoMo' Isn't Going Anywhere*, Mashable (Apr. 30, 2013), http://mashable.com/ 2013/04/30/solomo/.

2. Years after the innovations of Groupon and other leaders of this new technology

paradigm, IBM belatedly recognized that integrating local commerce with social networking and mobile technologies was a key requirement for retailers and their customers. *See* Kali Klena, Jill Puleri, & Laura VanTine, *Greater expectations: Consumers are asking for tomorrow, today*, IBM Institute for Business Value (2014), http://www-935.ibm.com/services/multimedia/GBE 03585USEN.pdf. IBM scrambled to add SoLoMo technology to its flagship WebSphere Commerce Suite. When it hurried to add these features, however, it unlawfully used Groupon's technology and infringed Groupon's intellectual property. IBM subsequently reaped millions of dollars in revenue from sales of its enhanced WebSphere software that bolstered its floundering business.

3.      Groupon now brings this action to halt "Big Blue" from further trampling on the intellectual property rights of today's technology pioneers and to maintain a level playing field for continued innovation, disruption and growth.

## NATURE OF THE CASE

4.      This action arises under 35 U.S.C. § 271 for IBM's infringement of U.S. Patent No. 7,856,360 (the "'360 patent").

## THE PARTIES

5.      Plaintiff Groupon is a citizen of Delaware and Illinois. It is a corporation organized under the laws of the State of Delaware and headquartered at 600 West Chicago Ave., Chicago, IL 60654. Groupon offers a vast mobile and online marketplace where people discover and save on amazing things to do, see, eat, and buy. Groupon's technology enables real-time commerce with respect to local businesses, travel destinations, consumer products, and live events—allowing shoppers to find the best a city has to offer. Its technology has created a vast marketplace of unbeatable deals all over the world.

6.      At the same time, Groupon has redefined how traditional small businesses attract,

retain, and interact with customers. It provides merchants with customizable and scalable tools and services to grow their businesses and reach new customers. Groupon's ground-breaking technology and platform is protected by intellectual property, including U.S. Patent No. 7,856,360.

7.    Defendant IBM is a citizen of New York. It is a New York corporation, with its principal place of business at 1 New Orchard Road, Armonk, New York 10504. IBM maintains an extensive presence throughout this district, including an "Innovation Center" in Chicago and offices around the Chicago metropolitan area. IBM may be served through its registered agent for service, CT Corporation System, 208 S. La Salle St., Ste. 814, Chicago, IL 60604.

## JURISDICTION AND VENUE

8.    This action arises under the patent laws of the United States, 35 U.S.C. § 271 *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

9.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

10.    Personal jurisdiction exists over IBM because IBM conducts business in Illinois, including by maintaining multiple offices in Illinois, and because infringement has occurred and continues to occur in Illinois by, *inter alia,* IBM's sale and offers to sell infringing products.

## FACTUAL BACKGROUND

11.    Groupon is the current assignee, and the sole and exclusive owner of all right, title and interest in United States Patent No. 7,856,360, entitled "System for Providing a Service to Venues where People Aggregate." A copy of the '360 patent is attached hereto as Exhibit A.

12.    The '360 patent was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on December 21, 2010. The PTO agreed that the claims covered patentable subject matter under 35 U.S.C. § 101 because, as the applicant explained, "[t]he re-

ceipt and transmission of such real-time data is more than an 'insignificant extra-solution activity (i.e., saving data in a database and displaying data from a database).' Rather, the database monitors the data and can perform various actions in relation to the real-time data, such as limiting the recipients, limiting the real-time data or other actions as needed. The subject claims require that there be a determination as to who the recipient(s) is and what information is to be provided to the recipient. This is an active step, unlike displaying data on a monitor." Put differently, the '360 patent's claims are directed to the problem of aggregating real-time electronic data about the locations and traits of owners of nearby mobile devices and algorithmically correlating that data to produce demographic information that is useful to both merchants and consumers. Mobile devices with built-in location sensors do not on their own have a way to aggregate their individual data with that of other devices, nor do they provide social networking capabilities based upon their owners' characteristics. The '360 patent claims the technology for creating these mobile device capabilities, such as check-ins, real-time location tracking of multiple users, and correlating characteristics of those users with location data. Its specification describes the use of classification algorithms for producing these correlations, such as vector quantizers, neural network algorithms, and other ranking algorithms, using such classification techniques such as Bayesian Decision Theory. *See* Col. 11 ll. 15-23.

13.    The invention of the '360 patent also uses real-time location data and social networking information to provide personalized location-based offers and incentives on behalf of local merchants. The invention employs computer algorithms correlating individual user GPS locations, interests, and demographics with merchant locations, marketing goals, and incentive criteria. The invention employs mobile communication devices and data processors configured to transmit processed data consisting of specific constituents.

14.    IBM's WebSphere Commerce suite is an e-commerce and fulfillment platform

4

widely used by retailers worldwide. On information and belief, IBM's "middleware" category of products—to which WebSphere Commerce belongs—has generated over one trillion dollars in revenue since 2009.

15. WebSphere Commerce, among other features, enables businesses to contact customers in real time with targeted marketing communications and incentives based on their current location, activity, and interests.

16. IBM promotes these location-based services as a key feature of its WebSphere Commerce platform. "Mobile optimized stores also enable business users to create marketing campaigns leveraging location-based service and global positioning system (GPS)-enabled mobile devices to target mobile customers with personalized content and offers." *See IBM WebSphere Commerce: Deliver a seamless and consistent buying experience across digital and physical channels*, IBM Software (2014), http://www-01.ibm.com/common/ssi/cgi-bin/ssialias?subtype=SP&infotype=PM&appname=SWGE_ZZ_MR_USEN&htmlfid=ZZS03072USEN&attachment=ZZS03072USEN.PDF.

17. IBM's WebSphere Commerce customer engagement platform and social commerce participation features permit customers with GPS-enabled devices to receive location-based content and awards, and allow targeting of customers based on social network participation, such as Facebook. In a 2012 presentation on location-based services available with WebSphere Commerce, IBM emphasized the use of "devices such as a GPS-enabled mobile device that can detect a client's geographic location or proximity to a point of interest." *See WebSphere Commerce V7 Feature Pack 4: Location-based services* 8, IBM Corporation (2012) ftp://ftp.software.ibm.com/software/iea/content/com.ibm.iea.wcs/wcs/7.0.0.4/ProgrammingModel/LBS.pdf. WebSphere provides functionality allowing a venue (*e.g.*, a retail location) to receive information from and about a mobile device user.

18.     IBM's location-based services were built using Groupon's innovations and pa-tented technology.  WebSphere Commerce uses the technology claimed by the '360 patent as the basis for its location-based deals and analytics features.

19.     These features contribute significant value to IBM's offerings.  Groupon seeks, among the other relief to which it is entitled, royalties on the billions of dollars in revenue that IBM has received based on its unlawful use of Groupon's patented technology.

**COUNT ONE**
**INFRINGEMENT OF THE '360 PATENT**

20.     Groupon is the owner of all right, title, and interest in the '360 patent.  The USPTO duly issued the '360 patent on December 21, 2010.  The '360 patent was duly assigned to Groupon.  A true and correct copy of the '360 patent is attached hereto as Exhibit A.

21.     Defendant IBM has been, is currently, and unless enjoined will continue to in-fringe, contribute to the infringement of, and/or induce others to infringe one or more claims of the '360 patent.

22.     IBM had knowledge of the '360 patent at least as early as June 2015 and in any event had knowledge of the '360 patent as of the filing date of the instant action.

23.      In taking the acts herein alleged to constitute induced infringement, IBM knew or should have known that its acts would result in the actual infringement by one or more of its cus-tomers of one or more of the claims of the '360 patent, and thereby intended such infringement. IBM's acts did, in fact, induce such infringement of one or more claims of the '360 patent.

24.     With respect to the acts herein alleged to constitute contributory infringement, IBM knew that the products and/or components thereof identified herein as having been supplied by IBM were especially made or especially adapted for use in an infringing combination, and that such specific products and/or components thereof were not staple articles or commodities of

6

commerce suitable for substantial non-infringing use.

25.     IBM has infringed the '360 patent by making, using, offering to sell, selling, installing, configuring, or operating  within the United States the IBM WebSphere Commerce platform and by encouraging its customers to use the patented features of the '360 patent.

26.     WebSphere Commerce includes functionality which permits a business to track customers in real time via customer "check-ins" at a venue, store-based sensors, and GPS data, as demonstrated by IBM's own documentation.



*See Location-based services*, IBM Knowledge Center, http://www.ibm.com/support/ knowledge-

ceter/SSZLC2_7.0.0/com.ibm.commerce.webservices.doc/concepts/cwvlocation.htm?lang=en;Tr

igger:CustomerChecksIn;  IBM  Knowledge  Center,  http://www.ibm.com/support

/knowledgecenter/SSZLC2_7.0.0/com.ibm.commerce.managementcenter.doc/concepts/csbtriloc

base.htm?l ang=en.

27.    WebSphere Commerce implements functionality for correlating customer location

with customer trait or demographic information.  When a customer checks in at a venue, Web-

Sphere Commerce can record the real-time location of that customer and can target that customer

based on customer segments, including demographic information, an example of which is shown

by IBM's documentation below.

**Customer segment groups**

A member group of the type *customer segment group* is a collection of users, as defined by the Seller or merchant, who share a common interest. A customer segment group is a more generic term to mean a set of users or customer segments (which can be created using the WebSphere Commerce Accelerator). Member groups are similar to clubs that are offered by large stores for their frequent or preferred customers and are used primarily for marketing purposes or sale strategies. Being part of a member group can entitle customers to a promotion for purchasing products. For example, if market research shows that senior customers repeatedly purchase travel books and luggage, you can assign these customers to a member group called "Seniors' Travel Club." Likewise, you can create a member group to reward frequent customers for their business. You can also create member groups that are based on demographic characteristics, such as a member group for students. You can assign different prices to products for different member groups. You can also customize the way products and categories appear to member groups.

*See Customer segment groups*, IBM Knowledge Center, http://www.ibm.com/support/knowledg

ecenter/SSZLC2_7.0.0/com.ibm.commerce.admin.doc/concepts/cpccustseggrps.htm?lang=en.

28.    IBM described the ability of WebSphere Commerce to track, communicate, and

use customer location and demographic information in its 2012 presentation on the product's lo-

cation-based services:  "There is a new dialog trigger for tracking when a shopper checks-in us-

ing their mobile device.  The check-in location type can be a point of interest, such as a specific

store, or a region, such as a city.  The screen capture shows a single point of interest selected

however multiple stores or cities can be selected in a single activity.  When setting up this trig-

ger, you also have the option to set frequency details such as how many times a shopper

checked-in over a period of time."  IBM further emphasized that, with WebSphere Commerce,

"[s]hoppers with GPS-enabled mobile devices are able to get location-based content in their

store, such as seeing flyers for their local store, and getting rewards for checking in to their local store." *See WebSphere Commerce V7 Feature Pack 4: Location-based services* 26, IBM Corporation (2012) ftp://ftp.software.ibm.com/software/iea/content/com.ibm.iea.wcs/wcs/7.0.0.4/ProgrammingModel/LBS.pdf.

      29.    IBM has also demonstrated that its WebSphere Commerce product uses GPS data to generate and offer promotions:



As IBM describes the feature, "[w]hen a shopper checks in to the Yorkdale Centre then they receive a text message welcoming them to the store and informing them of the store specials." *See WebSphere Commerce V7 Feature Pack 4: Location-based services* 22, 26, IBM Corporation (2012) ftp://ftp.software.ibm.com/software/iea/content/com.ibm.iea.wcs/wcs/7.0.0.4/ProgramminggModel/LBS.pdf. IBM explained that "[c]ustomers with GPS-enabled mobile devices can receive location-based content and rewards in smart phone and tablet starter stores. For example, customers can view store flyers for nearby store locations. In addition, customers can check in to nearby store locations on their mobile devices to receive rewards such as coupons." *See Location-based services*, IBM Knowledge Center, http://www.ibm.com/support/knowledgecenter/SSZLC 2_7.0.0/com.ibm.commerce.webservices.doc/concepts/cwvlocation.htm.

      30.    The Marketing Component of WebSphere Commerce further enables aggregation

of information about marketing activities based on triggers or actions such as customer check-ins, and the presentation of that information to users of WebSphere Commerce.



This information includes the number of customers in a particular demographic group who have triggered the relevant action. *See Customer counters in web and dialog activities*, IBM Knowledge Center, http://www.ibm.com/support/knowledgecenter/SSZLC2_7.0.0/com.ibm. commerce.management-center.doc/concepts/csbactstats.htm.

31.    IBM infringes at least claim 22 of the '360 patent. Exemplary reasons why IBM infringes claim 22 are as follows:

a.   The preamble of Claim 22 recites "A system for providing a service to venues where people aggregate, said system comprising members associated with an organization for processing and transmitting information to said venues, said members or non-members, said members having mobile communication devices, said system requiring at least one member to attend a venue." IBM's WebSphere Commerce allows customers with GPS-enabled devices to receive location-based content and awards and enables the targeting of customers based on social network participation, such as Facebook.

b.   Claim 22 further recites "a data processor." IBM's WebSphere Commerce requires a data processor on the computer platforms on which

IBM's software runs, including hardware sold by IBM.

c.  Claim 22 further recites "receiving real-time data comprising information about attendees at said venue from a mobile communication device of at least one member presently or recently at said venue, said real-time data comprising location information of said member provided by (1) a position-sensing device, or (2) said member checking-in using said mobile communication device." IBM's WebSphere Commerce offers the ability to track customers by, among other things, "check-ins" at a venue, store-based sensors, and GPS data.

d.  Claim 22 further recites "correlating said location information with trait information of said member on said data processor to provide a demographic of attendees at said venue." IBM's WebSphere Commerce associates a customer location or check-in with customer email, other identity information, or with a demographic-based customer segment.

e.  Claim 22 further recites "communicating to a recipient said demographic of attendees at said venue." IBM's WebSphere Commerce sends check-in information to marketing managers and other recipients associated with the venue or store and can aggregate customer demographic information and display to marketing managers how many customers in a demographic checked-in to the venue or store.

32.  IBM further infringes at least claim 27 of the '360 patent. Exemplary reasons why IBM infringes claim 27 are as follows:

a.  The preamble of Claim 27 recites "A system for providing a service to venues where people aggregate, said system comprising members associ-

11

ated with an organization for processing and transmitting information to said venues, said members or non-members, said members having mobile communication devices, said system requiring at least one member to attend a venue." IBM's WebSphere Commerce allows customers with GPS-enabled devices to receive location-based content and awards and enables the targeting of customers based on social network participation, such as Facebook.

b. Claim 27 further recites "a data processor." IBM's WebSphere Commerce requires a data processor on the computer platforms on which IBM's software runs, including hardware sold by IBM.

c. Claim 27 further recites "comprising information of a reward." IBM's WebSphere Commerce sends information such as discounts or coupons for targeted customers at a given store or location.

d. Claim 27 further recites "prior to a member being in a venue, informing said member of said reward that is receivable upon said member indicating in real time said member's presence in said venue." IBM's WebSphere Commerce contacts potential customers by email, e-flyer or other targeted marketing communication and permits customers to check-in to store locations on their mobile devices to receive rewards such as discounts or coupons.

e. Claim 27 further recites "receiving said indicating from a mobile communication device of said member, whereby said reward becomes receivable." IBM's WebSphere Commerce tracks customer location based on "check-ins" at a venue, store-based sensors, or GPS data, and makes a re-

ward such as a coupon available to the previously informed customer.

f.  Claim 27 further recites "processing said indicating to provide processed data comprising (A) the real-time location of said member, (B) a trait of said member, wherein said data processor comprises said trait, (C) a demographic of attendees at said venue, wherein said data processor comprises said demographic of attendees at said venue, or (D) a combined characteristic of said venue, wherein said data processor comprises said combined characteristic of said venue."  IBM's WebSphere Commerce records the real-time location of the customer and associates a customer location or check-in with customer email or other identity information.

g.  Claim 27 further recites "communicating to a recipient said processed data."  IBM's WebSphere Commerce sends check-in or user location information to marketing managers and other recipients associated with the venue or store and can aggregate customer demographic information and display to marketing managers how many customers in a demographic checked-in to the venue or store.

33.     On information and belief, IBM has willfully infringed and continues to willfully infringe one or more claims of the '360 patent despite its knowledge of the '360 patent and despite an objectively high likelihood that the sale and use of the accused WebSphere Commerce product would directly and indirectly infringe one or more claims of the '360 patent.

34.     As a direct and proximate consequence of IBM's infringement of the '360 patent, Groupon has suffered and will continue to suffer irreparable injury and damages, in an amount that an award of money would never be adequate to fully remedy, for which Groupon is entitled to relief.  Groupon seeks damages, as well as injunctive relief against further infringement.

## PRAYER FOR RELIEF

Groupon respectfully requests that the Court enter judgment against IBM as follows:

A.     That the '360 patent has been infringed by IBM;

B.     That IBM's infringement of the '360 patent has been willful;

C.     An injunction against further infringement of the '360 patent;

D.     An award of damages adequate to compensate Groupon for IBM's infringement of the '360 patent, including pre-judgment interest and costs;

E.     An award of all other damages permitted by 35 U.S.C. § 284;

F.     A determination that this is an exceptional case within the meaning of 35 U.S.C. § 285 and an award to Groupon of its costs and reasonable attorneys' fees incurred in this action; and

G.     Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Groupon demands trial by jury on all claims and issues so triable.

Dated:  May 9, 2016                                          Respectfully submitted,

*Of Counsel:*

J. David Hadden                                             By:  */s/ Thomas L. Duston*
Email: dhadden@fenwick.com                                  Thomas L. Duston (IL Reg. No. 6196612)
Saina S. Shamilov                                           Tron Y. Fu (IL Reg. No. 6309042)
Email:  sshamilov@fenwick.com                               MARSHALL, GERSTEIN & BORUN LLP
Phillip J. Haack                                            233 South Wacker Drive
Email:  phaack@fenwick.com                                  6300 Willis Tower
Adam M. Lewin                                               Chicago, Illinois 60606-6357
Email: alewin@fenwick.com                                   Telephone: (312) 474-6300
FENWICK & WEST LLP                                          Facsimile:  (312) 474-0448
801 California Street, 12th Floor                           tduston@marshallip.com
Mountain View, CA 94041                                     tfu@marshallip.com
Telephone:     650.988.8500
Facsimile:     650.938.5200                                 *Attorneys for Groupon, Inc.*